## DAVIS v. EAMES et al.

### No. 19,284; January 25, 1894.

#### 35 Pac. 566.

**Mines.**—A Contract Giving an Option to Purchase a mine, wherein the vendors covenant to sink a shaft of at least one hundred feet, imposes on them the absolute duty of sinking the shaft to the agreed depth, though they find no evidence that the mine contains enough valuable ore to justify them in purchasing it. Woodworth v. McLean, 97 Mo. 325, 11 S. W. 43, distinguished.[1]

APPEAL from Superior Court, Los Angeles County; Lucien Shaw, Judge.

Action by A. E. Davis against A. W. Eames and others for breach of contract. From a judgment for plaintiff, defendants appeal. Affirmed.

Wilson & Lamme for appellants; Houghton, Silent & Campbell for respondent.

BELCHER, C.—This is an action to recover damages for an alleged breach of contract by the appellants. The case was tried by the court without a jury, and judgment was entered against appellants for the sum of $700 and costs, from which, and from an order denying their motion for a new trial, they appeal. The facts are substantially as follows: The respondent, being the owner of a certain mining claim, known as the "Todd Mine," entered into a written contract with the appellants, by which, in consideration of the covenants and agreements to be performed on their part, he agreed to convey to them the property within four months for the sum of $6,000;

---

[1] Cited and approved in Moore v. Pooley, 17 Idaho, 61, 104 Pac. 900, a case where one applying for an option to purchase had notice of claimants to the title, other than the apparent owner, but contented himself with assurances from the latter and so contracted in writing with him for the option. He subsequently sought to evade this contract, setting up that the vendor was not the owner and alleging fraud. In an action against him to enforce the contract it was said: "The liability, it will be observed, was made absolute by the contract, whether the defendant elected to buy the property or refused to purchase."

and they covenanted and agreed to at once enter upon the mine, and sink a shaft thereon to the depth of at least one hundred feet, and to crosscut the ledge on the fifty-foot level, and at the bottom of the shaft to crosscut again at least ten feet, and to make such other developments thereon as they might deem proper. They.were also to have all the ore taken from the mine in doing this work. In pursuance of the terms of the contract, appellants entered upon the mine and sunk a shaft to a depth of fifty-six feet. At the fifty-foot level they ran a crosscut a distance of forty-seven feet and struck a granite wall, which they penetrated about three feet. They then, without the plaintiff's consent, discontinued work in the shaft and never afterward did any more work in it or sunk any other shaft in the mine. There were croppings on the surface of the mine and seams leading out from the croppings containing paying ore. The shaft was started on one of these seams, and from it defendants took some three or four tons of ore, which yielded about $20 per ton; but it gave out at a depth of about twenty-six feet, and below that point they found no ore in the shaft or crosscut. They afterward prospected on the surface, and spent some $1,200 in so doing, but did not, as they thought, find evidence that the ledge contained valuable ore in sufficient quantities to justify them in paying for the mine, and thereupon they abandoned the contract. It is admitted that it would have cost at least $700 to sink the shaft the remaining forty-four feet and make the ten-foot crosscut at the bottom; and, as a reason for not completing the contract in this regard, the witness James, who was an experienced miner in charge of the work, and interested with defendants therein, testified: ''One of the reasons why we felt that we could not comply with the written contract and why we wanted it modified was because it would require steam works to sink the shaft deeper, which would have cost a good deal.''

Counsel for appellants say in their brief ''that the only question to be considered is whether, under the facts and circumstances disclosed by the record, the respondent is entitled to anything in excess of nominal damages''; and they insist that he was not in fact damaged in any sum or to any extent by the failure to sink the shaft to the depth agreed upon, and hence that the court erred in awarding damages

in the sum of $700. In support of this position, counsel cite and rely upon the case of Woodworth v. McLean, 97 Mo. 325, 11 S. W. 43, 17 Morr. Min. Rep. 194. That was an action to recover damages for breach of a written contract. Plaintiffs owned a mining claim in New Mexico, and conveyed to McLean two-thirds of it as a consideration for the contract in question. The contract provided that McLean, within two years, and at his own expense, should cause a shaft of certain dimensions to be sunk to "the depth of five hundred feet on the vein of ore cropping out on said claim." McLean sunk the shaft, as agreed, to a depth of three hundred and thirty feet, but refused to carry it farther. There was evidence for defendant to the effect that the work was stopped at that point because the vein of mineral had given out entirely. The plaintiffs were awarded nominal damages only, and appealed. The appellate court said: "Plaintiffs regard this contract as obliging McLean to sink the shaft five hundred feet, in any event, irrespective of all intermediate developments. Their entire argument here rests on that assumption. We think the language of the agreement does not reasonably bear that interpretation. Its intent and purpose were to secure a development of the claim in a manner to 'subserve the mutual interests of the parties,' and, on the completion of the work, two-thirds of the shaft (as part of the entire claim) was to belong to McLean. The latter stipulated to sink the shaft five hundred feet 'on the vein of ore cropping out on said claim.' If, in the progress of the work, all indications of valuable mineral ceased, and the vein of ore ran out entirely, there was no obligation on McLean to proceed further. The question whether the vein of ore had ceased is one of fact, to be tried in the usual way. As the work stopped within the five hundred feet, the burden of proof rested on him to show that the vein of ore (along which the shaft was to proceed) had terminated, for the contract itself asserts the existence of the vein at the beginning. But on establishing that fact the requirements of the contract would be met, and there would be no breach whatever. The measure of damages for failing to continue a mining excavation, such as this, to the point fixed by the contract, is the reasonable price or value of the work necessary to complete the shaft to the agreed depth. But this rule is not applicable, in view of the language and evident purpose

of the contract here considered, unless the vein of mineral continued to the point where McLean ceased work." That case is plainly distinguishable from this. In that the decision was based upon the theory that as, by the terms of the contract, the shaft was to be sunk on the vein of ore cropping out on the claim, the requirements of the contract were fully met and complied with when the vein wholly gave out. In this case the contract is different. Here, the appellants were given the right to sink the shaft at such point as they might select, without reference to any vein or croppings, and to make such other and further developments as they might deem proper, and to take and appropriate to their use all ore extracted from the mine while doing the work. The obvious purpose of respondent was to have the mine opened to a depth of at least one hundred feet, in case appellants declined to purchase it; and of appellants, to satisfy themselves by making the stipulated explorations of the value of the property, before completing the purchase. The obligation of appellants to sink the shaft to the agreed depth was absolute, and was the consideration for the option given them. There were no modifying terms in the contract. The claim that the supposed value of the mine would not have been increased by sinking the shaft to the agreed depth, but would probably have been lessened, is based upon theory and not upon evidence or common knowledge. Respondent insisted that appellants should complete the shaft and crosscut in accordance with the contract, and we think he had a right to do so. The general rule as to the measure of damages in a case like this is correctly stated in Woodworth v. McLean, supra, and we think that rule applicable here, "in view of the language and evident purpose of the contract here considered." The judgment and order appealed from should be affirmed.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.